SCHENCK *et al. v.* DART *et al.*

The Supreme Court, on reversing a surrogate's decree upon the settlement of the accounts of executors, may make a final determination of the controversy, and is not required to remit the case for a new hearing before the surrogate.

Upon appeal in such case from the judgment of the Supreme Court, the whole case is to be examined in this court, as well upon the facts as the law.

This court will not inquire whether witnesses were or were not competent, when the facts to which they testified were established by other unobjectionable evidence. The question is, only, whether the Supreme Court pronounced the proper judgment upon the competent evidence.

Executors are not to be allowed commissions upon the transfer of corporate stock which was specifically bequeathed to legatees.

APPEAL from the Supreme Court. The respondent Schenck and two others were residuary legatees under the will of Peter H. Schenck, deceased, and on their petition the appellants, Russel Dart and Peter H. Vandervoort, the executors, were

cited to appear before the surrogate of the county of Dutchess, to render an account concerning the estate of the decedent. Peter H. Schenck died in September, 1852, leaving a large estate, embracing, among other assets, sixty-one shares of stock in the Glenham Company, a corporation which carried on the business of manufacturing woolen cloths. By the residuary clause of the will, the proceeds of eighteen shares of this stock were given to the respondents; the par value of each share being $1,000. According to that clause, the executors were empowered to sell all the property of the testator, not specifically devised or bequeathed, at public or private sale, and, after paying debts and other legacies, the residue was to be equally divided between the respondents, as residuary legatees. On the accounting before the surrogate, pursuant to the citation aforesaid, the principal controversy arose out of a sale of these eighteen shares made at auction at the Merchants' Exchange in the city of New York on the 29th of April, 1853. Norman Dart was nominally the purchaser, at the price of fifty-six per cent on the par value—eighty per cent being the value stated in the inventory of the estate made by the executors. The respondents claimed that the stock was sold at a large sacrifice; that the sale was unfairly made; and that the real purchaser was the executor, Russel Dart. In the decree made by the surrogate, he adjudged the sale to be valid, and charged the executor only with the price bid. The Supreme Court, at general term, in the second district, on appeal, reversed this part of the decree, and pronounced a new decree, or judgment, charging the stock so sold to the executor Dart at eighty per cent, the inventory valuation. The difference, including interest, was $5,591.08. The executor appealed to this court.

*Amasa J. Parker*, for the appellants.

*John K. Porter*, for the respondents.

COMSTOCK, Ch. J. The first point urged on this appeal is, that the Supreme Court, on reversing the decree of the surro-

gate, should have sent the proceedings back for a rehearing before him, instead of pronouncing a final judgment. We think this position cannot be maintained. Under the former system of procedure, where a judgment in an action at law was reversed upon writ of error, a *venire de novo*, or new trial, was always granted. In equity causes, on the other hand, the appellate court, if it reversed the decree appealed from, proceeded to make a new and complete adjudication, such as the pleadings and proofs in the cause warranted and required. According to the new code of practice, actions at law and suits in equity are no longer distinguishable as such; and the question has several times arisen as to the power and duty of an inferior appellate court where the judgment reviewed is reversed. We have followed the analogy of the practice in legal actions, and have determined that, in such cases, a new trial must be granted, unless indeed it is apparent, in the very nature of the case, that the party against whom the reversal is pronounced can never succeed in the action. (*Edmonston* v. *McLeod*, 16 N. Y., 543; *Griffin* v. *Marquadt*, 17 id., 28.) But this doctrine has been applied only to actions where a suit has been instituted and a trial has been had according to the provisions of the Code, and where the appeal from the judgment is given and regulated by the Code. The present case is not of that nature. The proceeding was before the surrogate, authorized by, and conducted according to, the Revised Statutes; and those statutes also authorized an appeal to the Court of Chancery (2 R. S., 609), the jurisdiction of which, after the adoption of the Constitution of 1846, was devolved on the existing Supreme Court by the judiciary act of 1847. There are no other provisions of law having anything to do with the question. The Code, enacted after the judiciary act, is silent as to proceedings of this character, and especially as to the appeal to the Supreme Court, except in the section (471) which declares, in effect, that, until the legislature shall otherwise provide, such appeal shall be governed by the preëxisting law. It follows that the Supreme Court, on the appeal in question, had all the powers of the Court of Chancery in such cases,

Schenck *v.* Dart.

and would appropriately exercise those powers according to the same rules of practice. It is scarcely necessary to add, that the Court of Chancery, on appeals from the decrees of surrogates settling the accounts of executors and administrators, proceeded to make a final determination of the controversy, and did not, on reversing such decrees, remit the proceedings back to the surrogates' courts for further hearing. The Supreme Court committed no error in following that practice.

The principal questions on the merits are, whether the sale at auction of the eighteen shares of stock in the Glenham Company was valid, and, if not, whether the appellant Dart was properly charged with eighty per cent on the value of the shares at the time of the sale. The solution of these questions depends wholly on the facts which surrounded and attended the transaction. An appeal to this court, in proceedings of this character, being authorized in general language by the 11th section of the Code, and being unrestricted by any other statute, is upon the whole merits; and the facts and the law are both to be examined. We have accordingly looked at the evidence, and we think it sustains the allegation of the respondents that Russel Dart, one of the executors, was the real purchaser of the stock, although it was ostensibly bid off in the name of his brother, Norman Dart. This being so, the law peremptorily determines that the sale was ineffectual. Russel Dart was executor and trustee, and the powers of sale conferred upon him by the will of the testator could not be exercised in his own favor, either directly or indirectly. He could not be both vendor and purchaser, at any price. (*Downes* v. *Grazebrook*, 3 Mer., 200.) He was, therefore, properly charged with the value of the stock. Upon the inquiry, what was the value, we think the best evidence which the case presents is, the sworn inventory of the executors themselves. Aside from that, the testimony is somewhat indecisive and unsatisfactory. This guide appears to have been followed by the Supreme Court; and we are not able to say that there is any error in their conclusion. We content ourselves with stating the result

arrived at, because an extended discussion of the evidence would not be profitable.

It appears that the respondent Schenck, who is one of the residuary legatees in trust for his children, and also Wells and Timberlake, who are the husbands of the two others, were examined as witnesses before the surrogate, after objection made by the appellants. Without discussing the question whether these witnesses were properly admitted to testify, we may observe, that the duty of the Supreme Court was to pronounce such a judgment as the competent evidence would justify, and that, if the evidence of those witnesses be rejected, the result is not affected. The material facts, on which the determination of the controversy depends, were established by other testimony.

It also appears that the surrogate allowed to the appellants commissions, amounting to $240.80, on other shares of stock in the Glenham Company which were specifically bequeathed, and which they transferred and delivered specifically to the legatees thereof. This allowance was reversed by the Supreme Court, and the sum stricken out of the accounts. We think the statute does not justify a commission in such cases. (2 R. S., 93, § 58.)

The judgment of the Supreme Court must be affirmed.

All the judges concurring,

Judgment affirmed.